**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HUBERT KNOWLES, ) | CASE NO.  1:10-cv-2466 |
|                    ) | |
| Plaintiff, ) | |
|                    ) | MAGISTRATE JUDGE |
| v.           ) | VECCHIARELLI |
|                    ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|                    ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Huber Knowles ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

## I.  PROCEDURAL HISTORY

On September 28, 2000, Plaintiff applied for SSI and alleged a disability onset date of September 26, 2000.  (Tr. 211.)  The claim was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 73-76.)  On June 11, 2003, ALJ Michael Cianci held Plaintiff's hearing and continued it so that Plaintiff could obtain medical records and an attorney.  (Tr. 211.)

On June 22, 2004, ALJ Alfred V. Lucas resumed Plaintiff's hearing.  (Tr. 211.)  On September 23, 2004, ALJ Lucas found that Plaintiff could perform a range of sedentary work and was not disabled.  (Tr. 216, 218-19.)  The Appeals Council vacated and remanded ALJ Lucas's decision for further proceedings for the following reasons: Although Plaintiff filed an application only for SSI, the evidence showed that Plaintiff could be eligible for DIB as well and ALJ Lucas did not consider whether Plaintiff was entitled to DIB; Plaintiff was not informed of his rights after ALJ Lucas proposed to introduce additional evidence into the record, including a right to a supplemental hearing; ALJ Lucas did not address certain medical evidence; and ALJ Lucas did not reconcile all of the opinions of Dr. Dariush Saghafi, upon which ALJ Lucas's residual functional capacity ("RFC") determination was based.  (Tr. 221-23.)

On September 1, 2006, ALJ Lucas held Plaintiff's hearing upon the Appeals Council's remand.  (Tr. 267-74.)  On September 29, 2006, ALJ Lucas determined that Plaintiff could perform a range of light work and was not disabled.  (Tr. 274.)  On March 27, 2008, the Appeals Council again vacated and remanded ALJ Lucas's decision for further proceedings for the following reasons:  ALJ Lucas failed to address whether Plaintiff was entitled to DIB; ALJ Lucas did not determine to what extent Plaintiff's ability

2

to perform a range of light work would be eroded by a need to alternate between sitting and standing; and ALJ Lucas did not elicit whether the vocational expert's ("VE") testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupation ("SCO").  (Tr. 277-78.)  The Appeals Counsel instructed that a different ALJ reassess whether Plaintiff was disabled pursuant to its instructions.  (Tr. 278.)

On September 17, 2008, ALJ Thomas A. Ciccolini ("the ALJ") held Plaintiff's hearing upon the Appeals Council's second remand.  (Tr. 19.)  Plaintiff appeared, was represented by an attorney, and testified.  (Tr. 19.)  A medical expert ("ME") and VE also appeared and testified.  (Tr. 19.)  On November 26, 2008, the ALJ found Plaintiff not disabled.  (Tr. 26.)  On August 27, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 9.)

On October 28, 2010, Plaintiff timely filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On February 24, 2011, Plaintiff filed his Brief on the Merits.  (Doc. No. 12.)  On April 27, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 16.)  Plaintiff did not file a Reply Brief.

Plaintiff asserts two assignments of error:  (1) the ALJ improperly assessed the credibility of Plaintiff's subjective complaints of pain; and (2) the ALJ's RFC determination is not supported by substantial evidence because it is inconsistent with consultative examiner Dr. Mehdi Saghafi's opinion.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 36 years old on his alleged disability onset date (Tr. 24) and 44 years old at the time of his last hearing before ALJ Ciccolini (Tr. 417). He has a limited education and is able to communicate in English. (Tr. 24.) He has past relevant work as a "machine operator." (Tr. 24.)

### B. Medical Evidence

Plaintiff has alleged both mental and physical impairments, but takes issue with the ALJ's analysis of only his physical impairments. Therefore, the following review of the medical evidence will be limited to Plaintiff's physical impairments—namely, Plaintiff's back problems and related physical limitations and pain.

On September 19, 2000, Plaintiff presented to the emergency room with complaints of pain in his low back and numbness in his legs. (Tr. 133.) The nurse who attended to Plaintiff indicated that Plaintiff reported he did not suffer a particular injury that caused his pain. (Tr. 133.) An MRI of Plaintiff's lumbosacral spine taken the next day revealed early disc space narrowing at L4-L5 and L5 - S1. (Tr. 136.)

On April 2, 2001, Plaintiff presented to Dr. Shu Que Huang, M.D., for an examination upon referral from the Bureau of Disability Determination. (Tr. 151-52.) Dr. Huang indicated that Plaintiff reported the following. Plaintiff suffered low back pain that radiated down his legs and caused tingling and numbness in his toes. (Tr. 151.) The pain also radiated to his face. (Tr. 151.) The pain was intermittent and was aggravated by walking for more than ten minutes at a time. (Tr. 151.) The pain rated at 10 on a scale of 1 to 10 in severity. (Tr. 151.) Dr. Huang concluded upon examination

4

that Plaintiff was generally healthy but had signs and symptoms of lumbar radiculopathy with no significant neurological deficits.  (Tr. 152.)  Dr. Huang opined that Plaintiff required proper pain management, and that with proper pain management Plaintiff "would be able to function at a medium level of physical demands."  (Tr. 152.)

On April 17, 2001, state agency reviewing physician Roy W. Starkey, M.D., assessed Plaintiff's physical RFC as follows.  (Tr. 157-62.)  Plaintiff could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds.  (Tr. 158.)  He could sit, stand, and walk for about 6 hours in an 8-hour workday with normal breaks.  (Tr. 158.)  He had an unlimited ability to push and pull except to the extent that he was limited in lifting and carrying.  (Tr. 158.)  He could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 159.)  He could occasionally climb ladders, ropes, and scaffolds.  (Tr. 159.)  He had no manipulative, visual, communicative, or environmental limitations.  (Tr. 159-61.)  On September 18, 2001, state agency reviewing physician W. Jerry McCloud, M.D., affirmed Dr. Starkey's findings.  (Tr. 162-63.)

On January 4, 2002, Dr. Donald J. Rohl, D.O., authored a letter to Dr. Disa Smith, M.D., explaining that he had examined Plaintiff.  (Tr. 178-79.)  Dr. Rohl reported that Plaintiff presented to him with complaints of low back pain and bilateral leg pain.  (Tr. 178.)  Dr. Rohl was of the impression that Plaintiff suffered a herniated disc at L4-5, advanced degenerative disc disease at L4-5 and L5-S1, and bilateral lower extremity radiculopathy.  (Tr. 179.)  On January 16, 2002, Plaintiff presented to Dr. Rohl for a follow-up examination.  (Tr. 181.)  Dr. Rohl reported that he was of the impression that Plaintiff suffered a herniated disc at L4-5 with moderate to severe foraminal and central

5

stenosis, and a herniated disc at L5-S1 with some foraminal and central stenosis.  (Tr. 181.)  Dr. Rohl further reported that Plaintiff desired to undergo decompression of his herniated discs.  (Tr. 181.)

On January 25, 2002, Plaintiff returned to Dr. Rohl for a follow-up on his decompression surgery and laminectomy.[1]  (Tr. 182.)  Dr. Rohl indicated that Plaintiff reported the following.  Plaintiff's leg pain and numbness were gone, but his back continued to hurt.  (Tr. 182.)  Plaintiff's back pain was different, manifesting itself in spasms.  (Tr. 182.)  Dr. Rohl indicated that Plaintiff's back spasms were "significant," so Dr. Rohl would have to "retain" Plaintiff's back.  (Tr. 182.)  Dr. Rohl further indicated that he gave Plaintiff medication, intended to place Plaintiff in physical therapy, and would see Plaintiff again in two weeks.  (Tr. 182.)

Plaintiff continued to present to Dr. Rohl for follow-up evaluations of his back through 2003.  (*See* Tr. 177-183.)  On February 8, 2002, Dr. Rohl reported that Plaintiff no longer had back pain; that Plaintiff rated his leg pain at 1 out of 10 in severity; and that Plaintiff had stopped taking his medication and was doing well.  (Tr. 183.)  On June 7, 2002, Dr. Rohl reported that Plaintiff's leg pain had resolved, Plaintiff's back pain was minimal, and Plaintiff had returned to work and tolerated work well.  (Tr. 187.)  On December 11, 2002, Dr. Rohl reported that Plaintiff continued to do well, although Plaintiff suffered some back pain that Plaintiff related to the weather.  (Tr. 189.)

On June 25, 2003, Ms. Linda A. Hautmann, Dr. Rohl's administrative assistant, authored a letter stating that Plaintiff was Dr. Rohl's patient and that Plaintiff was not

---

[1] A laminectomy is the "excision of the posterior arch of a vertebra."  Dorland's Illustrated Medical Dictionary 996 (30th ed. 2003).

6

currently able to work. (Tr. 177.) Ms. Hautmann did not explain why Plaintiff was not able to work, but indicated that Plaintiff underwent back surgery to address an injury he sustained from an automobile accident on December 6, 2001. (Tr. 177.)

On July 23, 2003, Dr. Rohl indicated that Plaintiff reported numbness in his left great toe; and that Plaintiff rated his back pain at 6 out of 10 in severity and leg pain at 3 out of 10 in severity. (Tr. 190.) Dr. Rohl further indicated that he would have Plaintiff undergo an MRI to determine whether Plaintiff's stenosis had become worse, and that he would "keep [Plaintiff] off work until further notice to make sure that there is nothing going on and he is not going to further damage his neurologic status." (Tr. 190.)

An MRI taken on August 6, 2003, evidenced degenerative disc disease with mild to moderate stenosis and enhancing tissues surrounding the spinal cord and abutting the S1 nerve root. (Tr. 167.) The same day, Ms. Hautmann authored another letter identical to the letter she authored on June 25, 2003. (Tr. 177.)

Between October 28, 2003, and December 12, 2005, Plaintiff presented to Dr. Carl Robson, M.D. with continuing complaints of low back pain that radiated into his buttocks and legs and numbness in his legs. (Tr. 244, 246-48, 250-53.)

On July 27, 2004, consultative examiner Dr. Dariush Saghafi, M.D., authored a medical source statement at the request of the Bureau of Disability Determination. (Tr. 204.) Dr. Dariush Saghafi assessed Plaintiff's physical RFC as follows. Plaintiff could lift and carry 20 pounds both frequently and occasionally. (Tr. 204.) He could stand and walk for less than two hours in an 8-hour day with normal breaks. (Tr. 204.) His ability to sit was not affected by his impairments. (Tr. 205.) His ability to push and pull was affected by his impairments, but Dr. Dariush Saghafi did not indicate how they

7

were affected. (Tr. 205.)  Plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop.  (Tr. 205.)  Plaintiff had no manipulative or communicative limitations.  (Tr. 206.)  Plaintiff had an unlimited ability to tolerate noise, dust, fumes, odors, chemicals, and gases; but he was limited in his ability to tolerate temperature extremes, vibrations, humidity and wetness, and hazards such as machinery and heights.  (Tr. 207.)  Dr. Dariush Saghafi noted that "[w]eather changes make [Plaintiff's] pain a lot worse."  (Tr. 207.)

On August 3, 2004, Dr. Dariush Saghafi authored a letter to the Bureau of Disability Determination summarizing his consultative examination of Plaintiff as follows.  (Tr. 193-95.)  Plaintiff's back pain and radicular symptoms limited Plaintiff's standing and walking to between 60 and 90 minutes at a time.  (Tr. 195.)  He could push and pull, but his ability to lift was limited "per his history" to 20 pounds.  (Tr. 195.)  He was able to bend on command, travel independently, interact with his peers, understand, and communicate satisfactorily.  (Tr. 195.)

On August 24, 2005, Dr. Robson indicated that Plaintiff reported he was able to tolerate his low back pain until his wife punched him in the back and increased his pain.  (Tr. 250.)

On May 31, 2006, consultative examiner Dr. Mehdi Saghafi, M.D., authored a medical source statement at the request of the Bureau of Disability Determination that indicated the following.  (Tr. 260-63.)  Plaintiff could frequently lift and carry 20 pounds and occasionally lift and carry 50 pounds.  (Tr. 260.)  He could stand and walk for about 6 hours in an 8-hour workday with normal breaks.  (Tr. 260.)  He needed to "periodically alternate sitting and standing to relieve pain or discomfort."  (Tr. 261.)  He was limited in

8

his ability to push and pull with his lower extremities; specifically, he would be limited in performing any movements that put a strain on his lower back. (Tr. 261.) He could frequently climb and balance; and he could occasionally kneel, crouch, crawl, and stoop. (Tr. 261.) He had unlimited manipulative and visual abilities. (Tr. 262.) He had no environmental limitations except that he was limited in his ability to tolerate humidity and wetness. (Tr. 263.)

Also on May 31, 2006, Dr. Mehdi Saghafi authored a letter to the Bureau of Disability Determination that explained her consultative examination of Plaintiff as follows. (Tr. 254-55.) Plaintiff suffered "residual low back pain status post operative lumbar spine, remote." (Tr. 255.) Plaintiff could sit, stand, and walk six hours per day; frequently lift carry 20 pounds; occasionally lift and carry 40 pounds; push and pull objects not exceeding 50 pounds; manipulate objects and operate hand and foot controls; drive a motor vehicle and travel for not more than two hours; and climb stairs. (Tr. 255.) Plaintiff's speech, hearing, memory, orientation, and attention were within the normal range. (Tr. 255.)

    **C.    Hearing Testimony**

        **1.    Plaintiff's Testimony**

At Plaintiff's hearing held on June 22, 2004, Plaintiff testified as follows. Plaintiff's back pain was not caused by an accident; rather, its onset was sudden. (Tr. 323.) His back surgery did not relieve his back pain; rather, his back pain became worse. (Tr. 324.) He had intermittent back and bilateral leg pain that he rated at an average of 8 on a scale of 1 to 10 in severity. (Tr. 326-27.) He used a back brace and cane on occasion; experienced muscle spasms in his back; had numbness in his right

9

leg such that he could not feel it; and he "tripped over himself." (Tr. 325-26, 340.) These symptoms increased when he sat "too long," walked "too far," or moved "too much." (Tr. 328.) He could stand 30 to 35 minutes at a time; walk 50 to 75 feet; sit for 30 to 45 minutes; and lift up to 20 to 25 pounds. (Tr. 328-30, 332.) He could not bend straight over and touch the floor; he could touch his knees and ankles only if he bent his knees; and he could squat only slightly. (Tr. 331-32.)

Plaintiff lived with his wife and five children. (Tr. 322-23.) He was unable to do any housework or yardwork, but he could take care of his personal needs such as feed and dress himself. (Tr. 336.) He had been prescribed Vicodin and Motrin to alleviate his pain, but the Vicodin made him drowsy and the Motrin upset his stomach. (Tr. 322-23.) He also had been prescribed a muscle relaxant to alleviate his pain, but he did not take full doses because it made him drowsy and unable to care for his two-year-old child while his wife was away at work. (Tr. 322.)

At Plaintiff's hearing held on April 11, 2006, Plaintiff testified as follows. Plaintiff did not drive an automobile, and he could not drive because his pain made it difficult. (Tr. 346.) He used Soma and Vicodin to alleviate his pain, but the medications caused him to be drowsy. (Tr. 353.) He could stand 30 to 45 minutes, walk about one-half of a block, sit for about one hour, and lift up to 20 pounds. (Tr. 361-63.) He could not perform activities such as do laundry, shop, or do yard work; he spent his time sitting around his house. (Tr. 366-67.)

At Plaintiff's hearing held on September 1, 2006, Plaintiff testified that he no longer took Vicodin for his pain because it was a narcotic, but that he continued to take Soma and other medications. (Tr. 395.) Plaintiff also confirmed the limitations to which

10

he testified at his prior hearing on April 11, 2006. (Tr. 398-403.)

At Plaintiff's hearing held on September 17, 2008, Plaintiff testified as follows. Plaintiff lived with his wife and dependent children, but he relied on his wife for support. (Tr. 424.) He did not drive an automobile, and he could not drive because his legs "knotted up" and his toes "shove[d] down to the floor at times and [didn't] release." (Tr. 424.) The ALJ was of the impression that Plaintiff had been working with Plaintiff's nephew on replacing a roof in 2003 when Plaintiff's nephew accidentally shot Plaintiff in the head with a nail gun. (Tr. 428.) Plaintiff denied that he was working on the roof and explained that he was merely present on the work site when he was accidentally shot. (Tr. 428-29.)

### 2. The ME's and VE's Testimony at the September 17, 2008, Hearing

The ME briefly discussed Plaintiff's record evidence. (Tr. 426-29.) Plaintiff's attorney asked the ME whether, based on the record as a whole, the ME believed Plaintiff's impairments met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 433.) The ME responded that "the question is whether the surgery he had on his back in 2002 actually failed to relieve his pain and the cause of his pain." (Tr. 434.) The ME noted that Plaintiff "continues to complain of the pain and numbness in his lower extremities without too much in the way of objective finding." (Tr. 434.) Plaintiff's attorney then asked the ME whether the evidence of Plaintiff's continued radiculopathy was consistent with a failed laminectomy. (Tr. 434.) The ME responded that "[i]t would seem to be." (Tr. 434.)

The ALJ indicated that he was bound by a prior finding that Plaintiff was limited

11

to a range of sedentary work and was precluded from performing his past relevant work. (Tr. 430; see Tr. 435.) The ALJ then posed the following hypothetical to the VE:

> The prior finding was that this Claimant has a Residual Functional Capacity for sedentary work . . . . So exertionally he has a full sedentary capability. Let me go to non-exertional limitations. The work should be simple and repetitive and it should not be complex. What I mean by not complex, there should be no bargaining, no mediating, no arbitration. As far as environmental limitations I really don't need to call this out but it just, but it jumps out. If somebody has a full sedentary capability, of course they should not be around unprotected heights, which would include scaffolds and ladders and ropes and so forth. The gentleman should not be exposed to moving machinery or hazards . . . . I'm not aware of any postural or . . . manipulation limitations.

(Tr. 431.) The VE testified that such a person with Plaintiff's age and education could perform other work as a dowel inspector (for which there were 500 jobs in the region, 2,000 jobs in Ohio, and 38,000 jobs in the nation), table worker (for which there were 4,000 jobs in the region, 17,000 jobs in Ohio, and 290,000 jobs in the nation), grading clerk (for which there were 1,635 jobs in the region, 6,082 jobs in Ohio, and 104,622 jobs in the nation), and surveillance system monitor (for which there were 1,675 jobs in the region, 3,400 jobs in Ohio, and 13,500 jobs in the nation). (Tr. 431-33.) The ALJ added to his hypothetical an inability to tolerate extreme temperatures and high humidity, and the VE testified that such limitations would not preclude the hypothetical person from performing the jobs to which he testified. (Tr. 432-33.)

The VE confirmed that her testimony was based on the job descriptions contained in the DOT, SCO, and other standards; and that, when her testimony diverged from such government standards, it was based on her knowledge, experience, and analysis of the current labor market. (Tr. 419-20.) The VE further stated, upon questioning from the ALJ, that one divergence from government standards would be a

12

description of jobs that provided for a sit/stand option. (Tr. 420.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and*

13

416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2003.

2. The claimant has not engaged in substantial gainful activity since September 26, 2000, the alleged onset date.

3. The claimant has the following severe impairments: residual low back pain, status post laminectomy of the lumbar spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . except he can only do simple, repetitive work. The work should not be complex (complex meaning no bargaining, mediating or arbitration). He cannot work around unprotected heights such as ladders, ropes or scaffolds. He should not be exposed to moving machinery or hazards.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

14

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 26, 2000 through the date of this decision.

(Tr. 21-26.)

### V. LAW & ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy,* 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff contends that the ALJ failed to properly assess the credibility of Plaintiff's subjective complaints of pain. For the following reasons, the Court agrees.

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981),* cert. denied, 461 U.S. 957 (1983). When a claimant complains of disabling pain, the Commissioner must apply a two step test to determine the credibility of such complaints that is known as the "Duncan Test." *See Felisky v Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994)* (citing *Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)*). First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.*

The Duncan Test does not require objective evidence of the alleged pain itself. *Id.* at 1039. The ALJ must consider all of the relevant evidence, including the following:

(1) the claimant's daily activities;

(2) the location, duration, frequency, and intensity of the claimant's alleged pain;

16

> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) treatments other than medication that the claimant has received to relieve the pain; and
>
> (6) any measures that the claimant takes to relieve his pain.

See *Felisky*, 35 F.3d at 1039-40 (citing 20 C.F.R. § 404.1529(c)). Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam). However, the ALJ must be clear why he finds that a claimant's subjective statements are not credible:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

S.S.R. 96-7p, 1996 WL 374186, at *2 (1996).

Here, the ALJ found that Plaintiff had an underlying medical condition that could cause his pain—namely, Plaintiff's residual low back pain status post laminectomy of the lumbar spine. (Tr. 21.) The ALJ then made the following conclusory statement about Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

17

residual functional capacity assessment.

(Tr. 22-23.)  The ALJ did not explain how Plaintiff's statements were not supported by the evidence; that is, the ALJ did not provide specific reasons why he found Plaintiff's subjective statements not credible that were sufficiently specific to permit this Court to perform a meaningful review of the decision.  Instead, the ALJ merely recited the medical evidence and Plaintiff's physicians' observations—some of which supported Plaintiff's subjective complaints.  Indeed, the ALJ noted that Plaintiff had not reported relief from his pain since his laminectomy in January 2002, which suggests that the laminectomy was not successful.  (Tr. 23.)

The Commissioner provided a lengthy and detailed explanation of how the record evidence supports the ALJ's credibility determination.  (Def.'s Br. 13-14.)  But the ALJ did not provide such an explanation in his decision; therefore, such a recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review by the Court.  See *N.L.R.B. v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715 n.1 (2001) (noting that counsel's *post hoc* rationalizations may not substituted the reasons supplied by the administrative agency); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Norman v. Astrue*, 694 F. Supp. 2d 738, 750 (N.D. Ohio 2010) (quoting *Sarchet* with approval).

The Court cannot perform a meaningful review of the ALJ's determination that Plaintiff's subjective complaints were not credible because the ALJ did not explain any

18

rationale for his credibility determination. Accordingly, remand is necessary for the ALJ to properly assess the credibility of Plaintiff's subjective complaints of pain and provide reasons for his credibility determination that are sufficiently specific to make clear the weight he gave Plaintiff's statements and the reasons for that weight.

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination because part of consultative examiner Dr. Mehdi Saghafi's opinion and other unspecified evidence supports the conclusion that Plaintiff cannot perform sedentary work. This argument is based on an incorrect legal standard, as a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. However, as remand is necessary for the ALJ to properly assess Plaintiff's subjective complaints of pain, and pain alone may affect a claimant's RFC to perform other work, upon remand the ALJ should also reassess Plaintiff's RFC.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

                                       s/ *Nancy A. Vecchiarelli*
                                       U.S. Magistrate Judge

Date: October 25, 2011